Smith *v.* Larrabee.

———————◆———————

JOHN D. W. SMITH & others, in equity, *vs.* SAMUEL LARRABEE.

*Bill to redeem. Venue. Foreclosure. Notice. Record. Intelligible description. Waiver of foreclosure.*

A bill to redeem land mortgaged may be maintained in the county where the defendant resides, although all the land lies in two other counties.

When a mortgage describes two parcels of land in different counties, and the notice for foreclosure, describing both parcels, is published according to law in a newspaper printed in each county, a copy of the notice published in each county, with the name and date of the paper in each county in which it was last published, duly recorded in the respective registries, is a sufficient recording under R. S. of 1841, c. 125, § 5 (R. S., c. 90, § 5).

A notice, describing land as "one undivided sixth part of township numbered four in the fifteenth range in the county of Piscataquis, and of township numbered four in the sixteenth range in the county of Somerset, subject to the reservation of public lots," and referring to the mortgage described by naming the parties, and date, and the book and page of registration, contains an intelligible description.

Where a published notice is signed with the name of the mortgagee " by " A. W. P., " his attorney," and the mortgager subsequently recognizes and adopts the proceeding as effectual, he may rely on these facts as, *prima facie*, sufficient evidence of the authority of the attorney.

The giving of permits to cut timber on mortgaged land by the mortgagee, and the receiving of stumpage after publishing notice for the purpose of foreclosure, are not a waiver of such attempted foreclosure.

BILL IN EQUITY, to redeem mortgaged land situated in the counties of Piscataquis and Somerset, and made returnable in this county of Penobscot, in which the respondent resides.

The bill is brought in the names of John De Wolf Smith, William C. Crosby, and Amasa Barrett, and alleges, substantially,

That, on July 28, 1853, Carlton S. Bragg, owning an undivided one-sixth part of township numbered four, range fifteen, in the county of Piscataquis (21,465 acres), and of township numbered four, range sixteen, in the county of Somerset (18,219 acres), each township subject to a reservation of 1000 acres for public lots, sold the same to Asa W. Babcock for $9421; that Babcock gave his two notes for $3557.50, payable to Bragg or order in one and two years, with interest annually, secured by a mortgage of the premises.

That by subsequent conveyances the title of Babcock passed to the complainants,—to Smith one-half, and to Crosby and Barrett one-quarter each.

That on Feb. 26, 1856, Bragg assigned the notes and mortgage to the respondent, who still owns them.

That on Oct. 29, 1863, the complainants, being desirous of redeeming the mortgaged premises, and having a legal and equitable right to do so, made a written demand upon the respondent for a true account of the sum due on the mortgage, and of rents and profits and expenditures for improvements; but that the respondent, up to the filing of the bill, has neglected and refused to render any account, and thereby prevented the complainants from performing or tendering performance of the conditions of the mortgage.

That Bragg, while holding the mortgage, and the respondent, after its assignment to him, from time to time in different years, gave permits to cut timber on said mortgaged premises, and cut and sold off and converted to their own use large quantities, for which the respondent should account as rents and profits.

The complainants offer to pay all sums equitably due.

Prayer for account, release of premises on payment of amount due, and for further relief.

Smith *v.* Larrabee.

The answer admitted execution of mortgage, complainants' title, assignment to the respondent and his present ownership, and the demand; but denied that the complainants had or have any legal or equitable right to redeem the premises, because of foreclosure.

The parties agreed upon the following facts:

That the respondent, after the assignment of the mortgage, as set out in the bill, at different times joined with other proprietors of the mortgaged premises, consisting wholly of timber lands, in giving written permits to Babb & Strickland to cut and carry away pine and other lumber from the mortgaged premises, the respondent being described in the permits as the owner of an undivided one-sixth part, and Babb & Strickland entered and cut under each of the permits; that the respondent received his proportion of all sums of money paid for stumpage of lumber cut under the permits, which were severally signed and executed by the respondent on Aug. 31, 1857; Aug. 26, 1858; Aug. 10, 1859; Sept. 3, 1860; Oct. 27, 1862; Sept. 22, 1863.

That during the whole period, from July 28, 1853 (date of mortgage), to Feb. 26, 1856 (time of assignment), one John Winn was one of the proprietors of the premises, and was duly authorized by Bragg to grant permits to cut timber on the premises in respect of and for the undivided one-sixth part then held by Bragg, as mortgagee, and that Winn did grant permits to cut lumber on the premises, and that lumber was cut under each of the same, and that Bragg received his proportion of all stumpage cut under the permits granted by Winn, and indorsed same on the mortgage notes, and that the permits executed by Winn were dated Aug. 10, 1853, and Oct. 9, 1854.

That the " Piscataquis Observer " is a newspaper printed in the county of Piscataquis, and that the " People's Press " is a newspaper printed in the county of Somerset; that the copies of the newspapers containing the notices of foreclosure hereinafter described, are dated and numbered as follows: the " People's Press," nos. 6, 7, and 8, of vol. 33, dated Sept. 21, 28, and Oct. 5, 1854, respectively; the " Piscataquis Observer," nos. 26, 27, and 28, of vol. 7, dated Sept. 21, 28, and Oct. 5, 1854, respectively.

That the respondent has never claimed ownership of the public lots in the towns, under the mortgage, nor received stumpage therefor.

·The notice of foreclosure, printed and recorded in Somerset county, and the certificate of the register, are as follows:

### NOTICE OF FORECLOSURE.

The undersigned, Carlton S. Bragg, of Bangor, in the county of Penobscot, hereby gives notice that Asa W. Babcock, of said Bangor, by his deed, dated the twenty-eighth day of July, A. D. 1853, recorded in Somerset Registry of Deeds, book 75, page 72, conveyed in mortgage to the undersigned one undivided sixth part of township numbered four, in the fifteenth range in the county of Piscataquis, and of township numbered four, in the sixteenth range in the county of Somerset, subject to the reservation of public lots, reference to said deed to be had. The conditions of said mortgage having been broken, the undersigned, by reason thereof, claims a foreclosure of the same.     CARLTON S. BRAGG.

By ALBERT W. PAINE, his Attorney.

September 12, 1854.

SOMERSET, SS.

The foregoing notice was copied from the "People's Press," a public newspaper printed in Skowhegan, in the county of Somerset, bearing date Oct. 5, 1854, vol. 33, no. 6, the same having been published three weeks successively in said paper.

Entered and compared by

DENNIS MOORE, Register.

Received October 19, 1854.

The other notice was the same as the foregoing, except that, instead of the words, "in Somerset Registry of Deeds, book 75, page 72," were "Piscataquis Registry of Deeds, book 29, page 59." And the certificate of the register, duly signed, was as follows:

PISCATAQUIS, SS.

I hereby certify that the above notice has been published three weeks successively in the "Piscataquis Observer," the last publica-

tion bearing date Oct. 5, 1854, and was entered for record Oct. 28, 1854, and compared.

*W. C. Crosby*, for the complainants.

1. The mortgagee being in actual and exclusive possession, granting permits to cut, could not foreclose under R. S. of 1841, c. 125, § 5, that provision being for him only who "is not desirous of taking and holding possession of the premises." He should have adopted one of the modes allowed under § 3.

2. The notice was not given by the mortgagee, but by one purporting to act as the mortgagee's attorney without evidence of authority. The authority should affirmatively appear. *Treat* v. *Pierce*, 53 Maine, 71. In the absence of proof, the legal presumption is against the act. Same as when executing a deed. Foreclosure is a statute conveyance. Subsequent acts of mortgagee are at most a ratification which is not sufficient. *Treat* v. *Pierce*, *supra*.

3. The description is not "intelligible." The notice distinctly indicates the extent of the claim. The notice does not disclose whether public lots are reserved in one or both townships, or what number of acres is reserved. There may have been a reservation intended in one, while the public lots may have been set out in the other; and to state the claim too largely misleads same as an under statement. In *Chase* v. *McLellan*, 49 Maine, 375, the general description, with reference to the record, was held sufficient against the original mortgager in possession who made the mortgage.

4. The record of the notices was not in accordance with the positive requirements of the statute. Each notice is recorded in one county only, instead of in "each." It is sufficient to publish the notice "in the county where the premises are situated," but the record must be made in each county containing premises covered by the mortgage. The original provision, Public Laws of 1838, c. 333, being different, the term "each" was introduced into the revision of 1841.

If the two notices, simultaneously published in both counties,

constitute one foreclosure, then "the name and date of" each newspaper in which it was last published should have been recorded in each county. R. S., 1841, c. 125, § 5. Otherwise no one could ascertain from the record that the provision requiring publication in the county where the premises are situate, has been complied with. *Morris* v. *Day*, 37 Maine, 386.

The statute requires the record of every county within which premises covered by a mortgage lie, to show each and every foreclosure made under the mortgage wherever made, because a foreclosure completed in another county constitutes a payment *pro tanto*, and thus removes an incumbrance upon the property within the county where records are examined. *Spring* v. *Haines*, 21 Maine, 126.

A complainant, searching the Piscataquis registry to learn whether no. 4, range 15, is or not incumbered by this mortgage, has a right to find there a complete history of every act of the mortgagee affecting that title, which is required to be recorded anywhere. He finds only a notice published in Piscataquis county, which he may believe unauthorized, defective, or waived. So far, the mortgage is wholly unpaid. But if the notice and record, etc., had in Somerset county, makes a good foreclosure upon no. 4, range 16, the value of that part of the mortgaged premises may be sufficient to pay the whole debt, and no. 4, range 15, be wholly freed from incumbrance. What other language could the legislature use to convey the idea contended for?

5. Subsequent possession and receipt of the rents and profits by the mortgagee was a waiver of the proceedings in foreclosure. The permits were granted both before and after the three years.

Can he be out of possession for the purpose of foreclosure, and in possession for the purpose of taking rents and profits? Counsel cited *Smith* v. *Kelley*, 27 Maine, 237; *Fay* v. *Valentine*, 5 Pick. 418; *Potter* v. *Small*, 47 Maine, 293; *Chase* v. *McLellan*, 49 Maine, 375; *Cutts* v. *York Manuf. Co.*, 18 Maine, 190; 2 Hilliard on Mort., 19.

*Geo. M. Weston*, submitted a brief on the same points.

*F. A. Wilson*, for the respondent,

Contended that the bill could not be maintained in this county, but should be brought in the county where the land lies, citing *Clark* v. *Scudder*, 6 Gray, 122; *Lienow* v. *Ellis*, 6 Mass. 331; 1 Washb. on Real Prop., 339; 1 Greenl. on Ev., § 189; 2 Bouv. Law Dict., "Privity" and "Privities;" Jacob's Law Dict., "Privies;" 2 Washb. on Real Prop., 15 and 16; *Hurd* v. *Curtis*, 19 Pick. 459.

KENT, J. The question in this case, on the merits, is whether the mortgage, assigned to the defendant, has been legally foreclosed. If it has not been, the prayer for redemption should be granted. If it has been, the prayer must be denied.

The defendant claims that a foreclosure was perfected by advertisement, in the mode pointed out in R. S. of 1841 (then in force), c. 125, § 5. The complainants deny that it has been thus legally foreclosed, for various reasons, which are set forth and urged in argument.

It is objected, in the first place, that the defendant, or Bragg, his assignor, was not in a situation in which he could avail himself of this mode of foreclosure, because, it is alleged, he was at the time of publication in possession of the premises, and therefore could not pursue this mode.

The premises named in the mortgage are timber and woodland, and it appears by the agreed statement of facts, that both Bragg, the mortgagee, and the defendant, his assignee, have at different times, before and since the publication, given permits to others to cut timber on the land, and have received payment therefor. Assuming that these facts sufficiently establish a possession, the question is whether such possession debars the foreclosure in this mode, and compels the party to resort to some other mode.

The law allows a mortgagee to have or to obtain possession for other purposes than foreclosure. The statute of 1841, c. 125, § 2, authorizes a mortgagee to enter on the premises or recover possession by suit and judgment before any breach of the condition of

the mortgage, when there is no agreement to the contrary. But this entry and possession has no relation to foreclosure, and is of no effect for that purpose, although continued for more than three years. The mortgagee, if he would foreclose, must proceed independently of such entry, before condition broken. Now he being in possession, how can he foreclose his mortgage, under the provisions of the statute? He is not in a condition to commence an action at law for possession, for he is already in possession. He may, we think, when thus in possession, commence a proceeding for foreclosure, after condition broken, by the written consent of the mortgager, or person holding under him. Or by a peaceable and formal entry for that purpose, in presence of witnesses, as provided in §§ 3, 4. We do not think that the law requires him to abandon his former possession absolutely, before he can resort to these methods. But by either of these modes he may change his former entry and possession into one for foreclosure, although the statute in terms gives the right thus to foreclose to those only who, after a breach of the condition, " are desirous of obtaining possession for the purposes of foreclosure." A fair construction of the statute will authorize a party, in possession for one purpose, to obtain a new possession of a different character from the former, *i. e.* one for the purpose of foreclosure. But in all these cases it is provided that this new possession, thus obtained, must be continued for the three following years.

The statute then goes on (§ 4) to provide for the case where the mortgagee is not desirous of taking and holding possession of the premises. It allows such person to foreclose by advertisement in a newspaper, or by serving a notice of his intention to foreclose on the mortgager or his assignee.

The question is, in this case, whether a mortgagee in possession, not for the purpose of foreclosure, can avail himself of this mode of foreclosing by publishing or serving a copy. It would be difficult to assign any valid reason why the law should not allow him to adopt this mode. It is certainly very plain and satisfactory. It is generally a better mode than any other, short of a suit, to give no-

tice in fact to all parties interested. If the notice is personally served, it is equal to notice by suit. There is nothing in the nature of the possession, before breach of the condition, which renders this mode more inapplicable than the one by written consent or by entry in presence of witnesses.

But it is urged that the statute, in its terms, restricts the use of this provision to one " not desirous of taking or holding possession." We, however, are of opinion that the intention of the legislature in this provision was simply to provide for the case, where the mortgagee did not wish to avail himself of any of the provisions of the law, to obtain by that proceeding possession of the premises. By the other modes, possession in fact was obtained. By this mode the party obtains no possession, nor any new rights relating to the possession. He simply obtains a right to have the three years allowed for redemption commence running. If he is in a condition not to desire or to need the aid of any process or proceeding, under the law, to obtain possession, he may adopt the manner in question by advertisement or personal notice. Any other construction of these several provisions would seem to debar the mortgagee in possession before condition broken, from the use of any of the modes of foreclosure.

2. It is also objected that there has been a failure to comply with the subsequent provision of the section, which requires that " a copy of such printed notice, and the name and date of the newspaper in which it was last published, be recorded in each registry of deeds in which the mortgage is, or by law ought to be recorded."

The facts in this case bearing on this point are, that one parcel of the land included in the mortgage is in the county of Piscataquis, and one in the county of Somerset. A notice was published by the mortgagee in a newspaper printed in each county, the first and subsequent publications in both counties being on the same days. The notices were alike, except that one referred to the mortgage deed as recorded in Piscataquis, and the other as recorded in Somerset Registry of Deeds. In both, the mortgagee claimed to foreclose the whole mortgage, on the ground of a breach of the conditions of the mortgage.

The notice published in Piscataquis was duly recorded in the registry of that county, and the one published in Somerset was duly recorded in that county. The register of each county duly certifies to the fact of such record. But there is no certificate or evidence that the notice published in Somerset was copied and recorded in Piscataquis, or *vice versa.* The objection rests on this last fact; and the question is, whether this omission to record the two notices, as published in the registry of each county, is fatal to the attempted foreclosure.

Each notice, as published, describes, as before stated, both tracts, and informs the reader that by that notice the mortgagee claims to foreclose the whole mortgage.

The general rule is, that the registry of deeds in a county is intended for the record of matters pertaining to the title to real estate lying within the limits of that county only. It is not the place where any record touching the title to land in any other county is usually found, or where any person is required to look for such record. If a person desired to ascertain the state of the title to a particular tract of land, he would examine the records of the county in which the land was situated, and no other. In this case the inquirer would find, in looking at the registry in Piscataquis, that the notice there recorded declared an intention to foreclose the whole mortgage, and that one of the tracts was in Somerset county. Now if both the notices had been there recorded, and also a certificate made in that registry of the names and dates of both newspapers in which the notice had been printed, it would not have shown that the same record had been made in Somerset county. It would still be necessary to examine the records in that county. The register of one county cannot properly certify that the records in another county contain certain matters. If he does, then his registry would contain a record touching land in another county, which would seem to be out of place there, giving no information, so far as the land in the other county was concerned, which could be relied on as legal evidence of the fact, or be of any value or importance in itself.

But it is insisted that the statute is imperative, and can bear no other reasonable construction than that which requires a registry of both notices in each county, together with the names and dates of both newspapers in which it was published.

The original act of 1838, c. 33, which first provided for this mode of foreclosure, did not seem to contemplate the case of a mortgage of land in two or more counties, but simply provided that the newspaper notice should be recorded in the registry of deeds where the mortgage is recorded. But in the revision in 1841, it is evident that this section was amended to meet the case above stated. It may, perhaps, be doubtful whether the legislature intended that more than one notice should be required to be published in a newspaper, even when the lands were in different counties. The statute names only a notice " in the (a) newspaper printed in the county where the premises are situated," and then provides that " a copy of such printed notice, and the name and date of the newspaper in which it was last published, be recorded in each registry of deeds, in which the mortgage deed is or by law ought to be recorded."

The object of this provision is manifest. It is that each registry shall contain a record of the notice to foreclose the mortgage, so that the inquirer may find there all the proceedings affecting the title in that county, where he would naturally look for them. To effect this object, it is not necessary to multiply the number of newspapers in which the notice is to be published. Such publication is to give notice to the mortgager or his grantee. It is not required to be in the county in which he lives. The words, " in the county where the premises are situated," may be complied with, if the notice is printed in the county in which any part of the premises are situated. If, having the question directly before them, the legislature had intended to require a newspaper publication in each county, it would seem probable that in the revision they would have used language which would clearly indicate the intent.

The construction that a single newspaper notice, recorded in each registry where the mortgage deed is or should be recorded, is

all that is required, is strengthened by the limitation of thirty days after the last publication, in which the record is to be made. In this case, it singularly happens, that both notices were published in the two counties on the same day, and the last publication in each was on the same day. But this could happen but seldom, particularly if the land was located in three or four different counties. If there were several notices, ending on different days, from which would the thirty days be reckoned? And so as to the three years for redemption given to the mortgager after the publication.

But it is unnecessary for us to determine this point absolutely, because in this case the notice was published in both counties. But the same general course of reasoning would lead us to the conclusion, that the object of the law is complied with, if the registry in each county contains a record of the notice of foreclosure published in that county, with the name and date, etc., of the newspaper, although it does not contain a record of a copy (almost in duplicate) of the same notice published in a newspaper in another county, with a certificate of publication in such newspaper outside of the county. We have seen that such certificate would be in no sense a compliance with the law, requiring a registry of the copy in each county, and could not be proof of any fact touching the registry in the other county. We think the foreclosure not fatally defective for this cause.

It is next objected, that there is no sufficient evidence that the published notices were given by the mortgagee, as required by the statute. It appears that they were signed " Carlton S. Bragg, by Albert W. Paine, his attorney."

It was decided in *Treat* v. *Pierce*, 53 Maine, 71, that the unauthorized signing and publishing of a notice of a foreclosure cannot, by a subsequent ratification by the mortgagee of the act, be rendered operative from the date of its publication. But in that case the defendant introduced affirmative evidence to prove, that the notice was signed and published by the person signing as attorney, when he was not such attorney, and had no authority or request from the mortgagee to publish the notice. These facts were proved.

On these facts, the court held, for reasons given in the opinion, that a subsequent ratification and adoption of the act could not make the notice operative from the date of publication. But the question was not raised, whether, in the absence of all proof by the plaintiff, it was necessary for the defendant to prove the authority of the agent, by evidence beyond the *prima facie* presumption.

In the case at bar, it appears that Bragg—the mortgagee in whose name the notice was published—recognized and adopted the act of Mr. Paine and his signature as his agent, by assigning, with the mortgage, to the defendant all the rights and benefits of a fore-closure commenced by him. This must refer to the notice in ques-tion, as there is no pretense that any other has ever been attempted. And the defendant—the assignee—claims and insists upon the foreclosure thus commenced by notice, signed by attorney.

There is no evidence that this recognition by the mortgagee was made after the act. We think, that, in the absence of any such evi-dence, we may fairly and properly presume that it relates to the time of publication. We think, that where a notice is published and signed with the name of the mortgagee or person holding the mortgage, " by A. B., his attorney," and the party afterwards rec-ognizes and adopts the proceeding, and claims rights under it, and claims that it is effectual to foreclose, that it is not necessary for him to produce further evidence of attorneyship; but he may rely on these facts as *prima facie* sufficient, until impeached or qualified by other testimony.

The objection that the premises are not " intelligibly " described, as required by the statute, is not tenable. The description in the notice is clearly sufficient to inform those entitled to redeem, with reasonable certainty, what premises are intended. *Chase* v. *McLellan*, 49 Maine, 375.

The complainants finally insist, if the court should be of the opin-ion that the notice, as published and recorded, was a sufficient commencement of the process of foreclosure, yet that the facts agreed in relation to the after possession and receipt of stumpage, by the mortgagee and the defendant, his assignee, show a waiver of the foreclosure begun.

It has been decided, that the commencement and prosecution of an action at law on the mortgage is a waiver of an entry to foreclose made previously.  *Smith* v. *Kelley*, 27 Maine, 237.

There are other cases, some of which are cited by the complainants' counsel, which go far to establish the general principle he contends for, that after the mortgagee has commenced a foreclosure in any of the modes permitted by the statute, he may change his intention and waive the foreclosure by acts which show such change of intention, being in themselves inconsistent with the further prosecution of the foreclosure in the manner first commenced.

Admitting the correctness of this general doctrine, the question arises, what act here shown is inconsistent with a purpose to avail himself of the foreclosure by notice in the newspapers?  We have seen that the object and the effect of such mode is not to obtain possession, and that it does not in fact have any bearing on the actual possession.  It neither gives nor takes away in the matter of such possession.  If, therefore, he could cause the notice to be published when in such possession, as has been before explained, *i. e.* giving permits and receiving stumpage, without any surrender of such possession, we can see no waiver of such attempted foreclosure, or any fact that is inconsistent with such continuing purpose and intent, by the subsequent receipt of income by the same means from the premises.  There has been no attempt to obtain possession by any of the other proceedings named in the statute, and no indication of any purpose to abandon the mode now relied upon.

A preliminary question was raised, whether this bill can be sustained in Penobscot county, as the land lies in other counties, although the defendant and some of the complainants live in the county in which the bill is brought.  On consideration, we are satisfied that a bill for redemption may be sustained in this county. It is in the nature of a personal action.  It seeks only for a final decree requiring the defendant to do a specific personal act, viz., release the premises.  The deed he gives must be recorded in the registry of the county where the land lies.  This keeps the record title perfect.  The obligation to do this, where there has been a

legal redemption, is one that attaches to the person wherever he is. The rule is, " *equitas agit in personam,*" and this doctrine has been applied where the bill was brought to foreclose a mortgage where that mode was allowed by law.

If a mortgage can be foreclosed by a bill brought in the county, *a fortiori*, it can be redeemed by such a bill. This case illustrates the practical difficulty of a rule which should absolutely require, in all cases, that the bill be brought in the county in which the land lies. In which of the counties should it be commenced? Or must there be two distinct bills, or, in case of land in four or five or more counties, in one mortgage, must there be a bill in each?

Without entering into a more extended discussion of this point, we will simply refer to a few authorities in which the question is considered. Story Eq. Jur., §§ 743, 744, 899, 900; *Great Falls M. Co.* v. *Worster*, 3 Foster (N. II.), 463, and cases there cited; *Toller* v. *Carteret*, 2 Vern. 494.

The conclusion is, that the foreclosure was perfected, and the bill cannot be sustained.

> *Bill dismissed with costs for defendant, but*
> *under the circumstances of this case, no costs*
> *to be taxed in the nisi prius court after*
> *the entry of the case in the law court.*

APPLETON, C. J.; WALTON, DICKERSON, BARROWS, and TAPLEY, JJ., concurred.

The following dissenting opinion was drawn by

CUTTING, J. Bill in equity brought in Penobscot county to redeem lands situated in Somerset and Piscataquis counties. The first question presented is, as to the jurisdiction of this court, sitting in the former, to adjudicate in matters touching real estate being in the latter counties. Or, in other words, whether equity will overrule the distinction at law between local and transitory actions.

" The court has cognizance of civil actions, legally brought before it, between party and party. R. S., c. 77, § 2.

I am aware of no statute or rule of the common law which

confers a greater jurisdiction on a court of chancery than that of law, as it respects local or transitory actions. In both instances the question arises, whether the process is *in rem* or *in personam;* the former when touching the realty, and the latter the person.

No legislation from the most remote period has compelled a party to defend his castle beyond the vicinage of his own peers; for, in a court of equity, it is notorious, that questions of fact frequently arise which are presented to a jury.

At law, so particular have courts been in maintaining this principle, they have invariably held that an assignee of covenants running with the land, cannot sustain an action for a breach except in the county where the estate is situated. *Lienow* v. *Ellis*, 6 Mass. 331; *Clark* v. *Scudder*, 6 Gray, 122; *White* v. *Sanborn*, 6 N. H. 220. It is said, that "chancery is ordained to supply the law, not to subvert the law." Lord Bacon proclaimed it, and Judge Story has cited it as a motto in the title-page of his Equity Jurisprudence.

The only authority cited, tending to sustain our jurisdiction, is from the same author (2 Story's Eq. Jurisprudence, § 744), wherein it is held, that in order to entitle a court of equity to maintain a bill for the specific performance of a contract respecting land, it is sufficient, that the parties, to be affected and bound by the decree, are resident within the State or county where the suit is brought, for the primary decree is *in personam* and not *in rem*. The incapacity to enforce the decree *in rem* constitutes no objection to the right to entertain such a suit.

Here, it may be remarked, that the learned author was speaking of a bill for a specific performance of a contract, which is only a chose in action, on which a suit at law may be brought in any county where either party resides.

But in a later edition, that section is enlarged by adding, that in the State of Pennsylvania it had been held, that a court of equity sitting in and for one county, had no jurisdiction over a bill praying for an injunction against the erection of a nuisance in another county; and this after a full review of all the authorities.

In conclusion, it may be remarked, that we know of no law giv-

ing a larger venue to a court of equity than to that of law, as to which the true rule is laid down in Bouvier, where he says, "In local actions, in which the subject or thing to be recovered is local, the action must be brought in that county where the cause of action arose; among these are all real actions, and actions which arise out of some local subject, or the violation of some local rights or interest, as the common law action of waste, trespass *quare clausum fregit*, trespass for nuisances to houses or lands, disturbance of right of way, obstruction or diversion of ancient water-courses, etc.," sustained by numerous authorities.

A bill in equity for the redemption of mortgaged real estate puts in issue the title, and is in its nature a real action, and as such has the common-law venue, unless that venue has been enlarged by statute. But the equity powers of this court are limited, confined to a certain specified jurisdiction, and not that enlarged power, such as is conferred upon the chancery court of England, and of some of the American States, as cited by Story. This principle has been so frequently enunciated by this court, that it becomes needless to cite authorities to sustain it.

Now what statute has ever been enacted in this State enlarging the common-law venue, so far as it respects local and transitory actions? We know of none except, perhaps, in cases of charters of certain railways extending into contiguous counties.

The question here raised might have been presented on demurrer and decided on inspection, but error in pleading, or even consent of parties, will not confer jurisdiction.